UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FOREST RESOURCE )
COUNCIL *et al.*, )
                                                     )
      Plaintiffs, )
                                                     )
v. ) Civil Case No. 21-601 (RJL)
                                                     )
MARTHA WILLIAMS, *et al.*, )
                                                     )
      Defendants. )

**MEMORANDUM OPINION**
(October 13, 2021) [Dkt. # 29]

Plaintiffs, a trade association and several local governmental entities located in the Pacific Northwest, brought this action to challenge the defendant agencies' decision to delay, via two rules issued in March and April 2021, the effective date of a January 2021 rule designating—and, more relevantly, de-designating—portions of Washington, Oregon, and California as "critical habitat" for the northern spotted owl. Currently pending before the Court is plaintiffs' motion for a preliminary injunction, filed at the end of September 2021, through which the plaintiffs seek immediate relief enjoining the two "delay rules" on the theory that plaintiffs will suffer irreparable harm absent this Court's intervention. Because plaintiffs do not meet their burden of establishing the existence of such harm as required to justify the extraordinary relief they seek, their motion for a preliminary injunction is **DENIED**.

## BACKGROUND

The present dispute is the latest centered on the management of a large area of forest in the Pacific Northwest, which requires a complex balance of competing economic, environmental, and conservation priorities governed by an overlapping patchwork of statutory and regulatory directives. To say the least, such management has spawned a bevy of litigation in both this and other courts. *See, e.g.*, *Am. Forest Res. Council v. Hammond*, 422 F. Supp. 3d 184, 187–89 (D.D.C. 2019) (summarizing this history). Here, the plaintiffs—a trade association and several counties in the area[1]—challenge the decision by the U.S. Fish and Wildlife Service ("FWS") and the Department of the Interior to twice delay the effective date of a rule promulgated in the final days of the previous Administration. That rule designated a new "critical habitat" area for the northern spotted owl, a threatened species that lives in portions of the forest in question, pursuant to the Endangered Species Act ("ESA"). *See* Revised Designation of Critical Habitat for the Northern Spotted Owl, 86 Fed. Reg. 4,820 (Jan. 15, 2021) ("2021 Designation Rule"). The rulemaking leading to the 2021 Designation Rule was itself prompted by the settlement of previous litigation in this Court, according to which the Government agreed to update a 2012 rule designating the owl's habitat. *See* Mem. in Support of Pls.' Mot. for Prelim. Injunction 1 [Dkt. # 29-1]; *see also* Designation of Revised Critical Habitat for the

---

[1] The plaintiffs in this action are: the American Forest Resource Council ("AFRC"), "a forest products trade association headquartered in Portland, Oregon which represents approximately 50 lumber and plywood manufacturing companies and landowners throughout the states of Washington, Oregon, California and elsewhere in the western United States," Compl. ¶ 10 [Dkt. # 1]; the Association of O&C Counties ("AOCC"), a group of fifteen counties in western Oregon that contain lands subject to the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 ("O&C Act") and managed by the Bureau of Land Management, *id.* ¶ 13; and Douglas, Lewis, Skamania, and Siskiyou counties, which are located in Washington, Oregon, and California and contain portions of the forests at issue here, *id.* ¶¶ 16, 19, 23, 24.

Northern Spotted Owl, 77 Fed. Reg. 71,876 (Dec. 4, 2012) ("2012 Designation Rule"); *Carpenters Indus. Council v. Jewell*, Case No. 1:13-cv-00361-RJL (ECF No. 126). After the settlement was approved in April 2020, FWS promulgated a proposed rule in August 2020, which, in relevant part, removed 204,653 acres of forest in Oregon from the owl's 2012 critical habitat designation. *See* Proposed Rule, Revised Designation of Critical Habitat for the Northern Spotted Owl, 85 Fed. Reg. 48,487 (Aug. 11, 2020). On January 15, 2021, the 2021 Designation Rule was published, with the final rule ultimately excluding approximately 3,472,064 acres from the critical habitat, including forest in California and Washington as well as Oregon. *See* 2021 Designation Rule, 86 Fed. Reg. at 4,820.

The 2021 Designation Rule did not take immediate effect, providing instead for an effective date of March 16, 2021. *See* 2021 Designation Rule, 86 Fed. Reg. at 4,820. On March 1, 2021, however, FWS published a notice in the Federal Register that: (1) purported to delay the effective date of the 2021 Designation Rule from March 16 until April 30, 2021; and (2) "open[ed] a 30-day comment period to allow interested parties to comment on issues of fact, law, and policy raised by [the 2021 Designation Rule] and whether further delay of the effective date is necessary." *See* Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date, 86 Fed. Reg. 11895 (Mar. 1, 2021) ("First Delay Rule"). On March 5, 2021, the plaintiffs filed their first Complaint in this proceeding, challenging the validity of the First Delay Rule under the APA, and on March 23, 2021, the plaintiffs moved for summary judgment. *See generally* Compl.; Pls.' Mot. for Summ. J. [Dkt. # 13].

Subsequently, on April 30, 2021, FWS published a second notice in the Federal Register, this time informing the public that the effective date of the 2021 Designation Rule would be delayed until December 15, 2021. *See* Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date, 86 Fed. Reg. 22,876 (Apr. 30, 2021) ("Second Delay Rule"). In that notice, FWS stated that further delay was "necessary to avoid placing undue risk on the conservation of northern spotted owl caused by allowing exclusions from its designated critical habitat to go into effect while the Service prepares a revision or withdrawal of the January 15, 2021, rule through additional rulemaking to address apparent defects." *Id.* Thereafter, in July 2021, FWS issued a proposed rule to withdraw the 2021 Designation Rule and instead implement a new habitat designation that excluded 204,797 acres from the 2012 habitat area. *See* Revised Designation of Critical Habitat for the Northern Spotted Owl, 86 Fed. Reg. 38,246 (July 20, 2021).

In August 2021, plaintiffs sought leave of this Court to amend their Complaint, seeking to add both new ESA-based claims against the First Delay Rule as well as APA and ESA claims against the Second Delay Rule. *See* Pls. Mot. for Leave to File Second Compl. [Dkt. # 26].[2] And finally, on September 27, 2021, the plaintiffs filed their currently pending motion for a preliminary injunction, asking this Court to enjoin the First and Second Delay Rules and thereby make effective the 2021 Designation Rule in light of what plaintiffs claim to be "irreparable injury" caused by the "unlawful" delays. *See* Pls.' Mot.

---

[2] Plaintiffs also sought to convert their pending motion for summary judgment into a motion for partial summary judgment on only the claims brought in the original Complaint. *See* Pls. Mot. for Leave to File Second Compl. [Dkt. # 26].

4

for Prelim. Injunction [Dkt. # 29]; Mem. in Support of Pls.' Mot. for Prelim. Injunction 1–4, 45.

## LEGAL STANDARD

Because it is an "extraordinary remedy," a preliminary injunction "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). The requirements for obtaining such an injunction are well established: a plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).[3] Our Circuit has traditionally applied a "sliding scale" approach to these four factors, pursuant to which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Though the ongoing validity of this approach has been called into question following the Supreme Court's decision in *Winter*, it has not been overruled and thus remains the law of this Court. *See, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018). In any event, even under the sliding-scale approach, the plaintiff "must demonstrate *at least some injury* for a preliminary injunction to issue." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (emphasis added). "A movant's

---

[3] Where, as here, the party opposing the injunction is the Government, the third and fourth factors merge because "the [G]overnment's interest *is* the public interest." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Id.*

## ANALYSIS

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)); *see also Trudeau v. FTC*, 384 F. Supp. 2d 281, 296–97 (D.D.C. 2005) ("A showing of irreparable harm is the sine qua non of the preliminary injunction inquiry."). Our Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. To wit, the injury "must be both certain and great; it must be actual and not theoretical and of such imminence that there is a clear and present need for equitable relief." *Olu-Cole v. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019). The moving party must "substantiate the claim that irreparable injury is 'likely' to occur," and thus "[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Wisconsin Gas*, 758 F.2d at 674. Finally, "the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Id.*; *see also MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021).

In their motion, plaintiffs assert that the delay rules, by maintaining the 2012 critical habitat area rather than that designated by the 2021 Designation Rule, have the effect of precluding a substantial portion of forest "from active forest management, including timber harvests and fuel reduction projects." Mem. in Support of Pls.' Mot. for Prelim. Injunction

25–29. Plaintiffs then identify four categories of irreparable harm stemming from this consequence of the delay rules: first, that the AFRC and its members are deprived of revenue from timber sales, *id.* at 29–30; second, that the counties suffer a related economic harm from the lost sales, as well as harm to their "social fabric" from the economic downturn, *id.* at 31–36; third, that the inability to undertake fuel reduction projects has caused harm from increased wildfires and smoke, *id.* at 36–41; and fourth, that plaintiffs suffer irreparable harm to their "procedural interests," *id.* at 41–42.

Plaintiffs' attempted showing of irreparable harm, however, falls short of the bar for the extraordinary relief they seek. Plaintiffs' first difficulty is that, while they have perhaps made out a plausible case of some *injury* from the delay rules (*i.e.*, so as to have standing to challenge the delay rules in the first place), they fail to show with the requisite specificity that these injuries are "of such imminence that there is a clear and present need" for relief. *Olu-Cole*, 930 F.3d at 529; *see also Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 181 (D.D.C. 2011) (rejecting claims of irreparable harm from challenged rule where they were supported only by "conclusory allegations" of imminence and severity). Instead, plaintiffs, through their motion and supporting declarations, identify only general harms caused by the designation of forest as critical habitat stemming from the 2012 rule, such as losses of timber sales suffered by AFRC members and tax revenues foregone by the counties. What plaintiffs fail to demonstrate, however, is that the delay in making the 2021 Designation Rule effective poses a specific and concrete risk of further (and irreparable) harm to them. Plaintiffs instead muster only

conclusory statements that such harm from further delay is imminent, failing to provide evidence of, for example, the imminent closure of mills or collapse of county finances due to the delays. *Cf. Wisconsin Gas*, 758 F.2d at 669 (requiring a showing that economic loss "threatens the very existence of the movant's business" to find irreparable harm). Without more, conclusory declarations that their identified injuries are irreparable are simply not enough to merit this extraordinary relief.

Plaintiffs' motion also suffers from a further and related defect: it fails to demonstrate how the relief they seek—an order from this Court enjoining the delay rules and thereby making the 2021 Designation Rule effective—would *in fact* prevent any alleged imminent and irreparable injuries. As FWS rightly notes, exclusion of forest from the critical habitat area does not inexorably (much less expeditiously) lead to the ability to harvest said forest for timber. Indeed, if the 2021 Designation Rule came into immediate effect, the complexity of the forest management regime demands consideration of other factors besides the forest's designation as critical habitat in permitting harvest generally, while any *specific* project would require additional planning and approval.[4]  *See* Defs.' Opp. to Pls.' Mot. for Prelim. Injunction, Ex. 2, Decl. of Barry Bushue, ¶¶ 6–20. In short,

---

[4] Likewise, plaintiffs have not demonstrated with the requisite specificity that the harms from wildfires in the Pacific Northwest are so causally linked to the delay in excluding the forest at issue from the critical habitat area that de-designation would in fact avert any harm from the fires. Such a linkage is ultimately too speculative to support enjoining the rules at this stage.

plaintiffs have failed to show that any concrete and imminent injury stands to be remedied by the extraordinary relief they seek in this Court.[5]

Finally, plaintiffs' claim of a "clear and present need" for their desired remedy— *i.e.*, the imminence and irreparability of their claimed injuries—is belied by their approach to this litigation. Though not necessarily dispositive on its own, plaintiffs' delay in seeking interim relief from this Court is highly indicative of the fact that plaintiffs do not in fact face the kind of harm warranting a preliminary injunction. *See, e.g., Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."). Plaintiffs did not file the instant motion for a preliminary injunction for nearly *seven months* after they brought this suit and first claimed harm from the delay of the 2021 Designation Rule. Likewise, plaintiffs waited to file this motion for nearly five months after the publication of the Second Delay Rule, and even for six weeks after they moved in this Court to amend their Complaint to add new claims against the Government. If plaintiffs' injuries stemming from the delays were of such imminence that they warranted immediate relief, it is not unreasonable to expect that such relief would be sought soon after plaintiffs were put on notice of the delays. *See Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 3d 58, ("Plaintiff's delay . . . undermine[s] any argument that its injury is of 'such imminence that there is a 'clear and present need for

---

[5] Lastly, plaintiffs' claim of "procedural harms," absent the showing of some further and more concrete injury, cannot alone support the granting of a preliminary injunction. *See, e.g., Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, No. 15-cv-01582, 2016 WL 420470 at *11 (D.D.C. Jan. 26, 2016) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544–45 (1987)).

equitable relief to prevent irreparable harm.'"). And plaintiffs do not anywhere contend that the injuries identified in their motion have become apparent only recently. Faced with plaintiffs' delay and their ultimate inability to point to a concrete, imminent harm from the challenged rules, it is difficult to not view this request for extraordinary relief as anything more than a procedural ploy to have the Court adjudicate their pending summary judgment claims more expeditiously. To say the least, such an end-run around the Court's docket is not the purpose of a preliminary injunction motion and should be discouraged.

## CONCLUSION

Thus, for all of the foregoing reasons, I find that plaintiffs have failed to demonstrate the requisite irreparable harm,[6] and plaintiffs' motion for a preliminary injunction is therefore **DENIED**. A separate order consistent with this decision accompanies this Memorandum Opinion.



RICHARD J. LEON
United States District Judge

---

[6] Because, as noted above, "a failure to surmount" the burden of showing irreparable harm "provides grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief," *Olu-Cole*, 930 F.3d at 529, I need not and do not address the parties' respective positions concerning the plaintiffs' likelihood of success on the merits of their claims or whether the equities and public interest favor issuance of an injunction.